UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**,

v.

**JAKE MAXWELL,**

    **Defendant.**

Case No. 1:22-CR-00099-RJL

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

The defendant, Jake Maxwell (hereinafter "Defendant" or "Mr. Maxwell) files this motion to suppress in custody statements designed by his law enforcement interrogators to elicit incriminating responses he on or about December 9, 2021[1], all without benefit of *Miranda* warnings. Such government action violated Mr. Maxwell's Fourth, Fifth, Sixth and Fourteenth Amendments.

## BACKGROUND

On November 10, 2021, a grand jury was empaneled, sworn and returned an indictment recommending seven (7) charges against Mr. Maxwell. Despite this, on or about December 9, 2021, FBI Agents required Mr. Maxwell meet them at the FBI field office in Atlanta, Georgia. Agents misled him into providing a potentially incriminating statement. Despite the fact that Mr. Maxwell believed he could not leave, at no point did agents advise Mr. Maxwell of his *Miranda* rights. On February 9, 2022, the government charged Mr. Maxwell by criminal complaint on charges of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct

---

[1] The subject of this motion is a recorded statement that has been provided to Defense counsel. However, if a statement is turned over at a later date, Defense would respectfully request leave to file any and all appropriate motions.

in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); and Acts of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). On February 10, 2022 Mr. Maxwell was arrested in the Northern District of Georgia. On February 17, 2022, Mr. Maxwell made his initial appearance in the United States District Court for the District of Columbia, and on March 25, 2022, Mr. Maxwell was indicted on the same charges above.

## ARGUMENT

An individual may raise a pretrial motion if the basis for the motion is then reasonably available, and the motion can be determined without a trial on the merits. Fed.R.Crim.P.12. A motion to suppress may be filed by an individual in a pretrial motion. Fed.R.Crim.P. 12(b)(3)(C).

### A. All Statements Made by Mr. Maxwell Were Unconstitutionally Obtained in Violation of his *Miranda* Rights.

The United States Supreme Court demands that a suspect must be informed of his rights before police interrogation can begin when the suspect's freedom of movement is restricted by government agents, and the questioning is designed to elicit incriminating responses. In such cases involving "custody" and "interrogation," the government must inform a suspect of his right to remain silent, that anything the suspect says can and may be used against him in the court of law, and that the defendant has a right to counsel and that counsel will be appointed for him without charge if he cannot afford counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966).

Statements made during custodial interrogation without a suspect being apprised of said rights are properly excluded at trial. Custodial interrogation entails inherently compelling pressure capable of "induc[ing] a frighteningly high percentage of people to confess to crimes they never committed." *Corley v. United States*, 556 U.S. 303, 321 (2009). In order to determine that a

suspect was subject to custodial interrogation, the court must find that government agents directed questions at the suspect for the purpose of eliciting incriminating responses and the suspect reasonably believed he was not free to leave. Upon being properly apprised of his *Miranda* rights, a suspect must then knowingly, intelligently, and voluntarily waive his right to remain silent in order to proceed with custodial interrogation.

### i. Mr. Maxwell was in custody at the time he gave a statement.

It is clear based upon the circumstances under which Mr. Maxwell gave the offending statement that he was in custody at the time it was given. While at the FBI field office, Mr. Maxwell reasonably believed that he was not free to leave. He was summoned by federal agents to an FBI field office and questioned in a small, cramped room. This would be sufficient to place any individual in reasonable uncertainty as to whether they are free to leave or subject to arrest. In fact, unbeknownst to Mr. Maxwell at the time of questioning, an indictment had already been issued against him at this time recommending charges.

In determining whether a suspect was in custody, the court must consider not only the totality of the circumstances surrounding the interrogation, but "[A] court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994)(internal citations omitted). "The ultimate 'in custody' determination [requires] two discrete inquiries: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Incommunicado interrogation of individuals in police-dominated atmosphere, while not physical intimidation, is equally destructive of human

dignity, and current practice is at odds with principle that individual may not be compelled to incriminate himself." *Miranda v. Arizona*, 384 U.S. 436 (1966).

The first prong in determining whether an individual was in custody requires examining circumstances surrounding an interrogation. In *U.S. v. Molina-Gomez*, the Supreme Court found a defendant to be in custody, for purposes of *Miranda*, when customs officers questioned him a second time for almost two hours at an international airport, in a small, windowless room with at least two customs officers, and where officers had already reviewed documents and were probing about the defendant's involvement with drug smuggling activity. 781 F.3d 13 (1st Cir. 2015). Although Mr. Maxwell was not officially arrested, Mr. Maxwell would clearly believe he was not free to leave making him "in custody" for the purposes of *Miranda*. Mr. Maxwell was alone, in a closed room, at the FBI Headquarters Office in Atlanta, Georgia (an hour and a half away from his home), with two federal agents questioning him, who at no point told him that he was free to leave. Even if Mr. Maxwell was not formally placed under arrest at the FBI office in Atlanta, Georgia, a reasonable person of his age with no criminal history and inexperienced in interacting with police officers, let alone federal agents, did not feel free to leave at the time of the statement.

The second element questions whether a reasonable person, based on the circumstances discussed above, would have felt at liberty to leave. This is an objective standard. The Supreme Court has recognized than "[a]ny police interview of an individual suspected of a crime has "'coercive aspects to it'" and "the pressure of custodial interrogation is so immense that it 'can induce a frighteningly high percentage of people to confess to crimes they never committed.'" *J.D.B. v. North Carolina*, 564 U.S. 261, 268 (2011)(internal citations omitted).

Mr. Maxwell was contacted by FBI Agents who required him to come and meet with them at their office in Atlanta, Georgia on or about December 9, 2021. Here, albeit not physical

intimidation, the federal agents dominated the atmosphere in which the interview took place. Such behavior is a substantial factor to consider in determining whether Mr. Maxwell was in custody. Nearly one month prior to this interview, a grand jury sat, was sworn, and returned an indictment against Mr. Maxwell. Although Mr. Maxwell was not aware of the empaneling and returning of charges against him, based upon email correspondence produced in discovery, namely an email sent from Agent Floyd to an assistant United States attorney indicating he uploaded video evidence to an online platform, it is reasonable to presume that Agent Floyd and Agent Urban *were* aware of such recommendation.

Objectively, an individual in Mr. Maxwell's situation at a state level, being interviewed by two police officers would rise to the level of a custodial interrogation. Therefore, it is reasonable to conclude that an individual in Mr. Maxwell's position would not have felt free to leave while being interviewed by two federal agents in the FBI field office an hour and a half away from his home. In sum: not free to leave; in the presence of law enforcement officers; an hour and a half away from home; not advised that he could leave or terminate the interview; and because *Miranda* warnings were not administered, the statements must be suppressed.

### ii. Mr. Maxwell was subject to interrogation at the time he gave a statement.

The United States Supreme Court has defined "interrogation" under *Miranda* as any words or actions by police that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291 (1980).

"At core of *Miranda* is a concern for oppressive interrogatory techniques that "overbear the will" of the suspect; such techniques include trickery, an unrelenting interviewing without breaks, and the good cop/bad cop routine." *U.S. v. Hitselberger*, 991 F. Supp. 2d 130 (D.D.C. 2014). In *Hitselberger,* the Court found that the defendant was not subject to an interrogation

because Navy Criminal Investigative Services agents asked only standard questions, i.e. biographical and identifying questions, "which were unlikely to elicit incriminating responses." *Id*. at 138. Noting that "standard questions that ask the suspect basic identifying questions are unlikely to elicit incriminating responses and are thus not coercive enough to establish an 'interrogation,'" the Court focused on the questions that were subject to the interrogation inquiry. *Id*. Specifically, the Court found that although pre-printed questions on a standard form that included an individual's "name, age, address, educational background, employment, identifying characteristics" do not necessarily fall under the "routine booking exception," the inquests still have the same quality as those asking during routine booking. *Id*.(internal citations omitted).

In the present case, the inquiries go far beyond what is considered biographical and routine. Here, Mr. Maxwell was asked leading questions, that they knew (and hoped) nonetheless would illicit an incriminating response. At no point was Mr. Maxwell advised of his rights as specified in *Miranda v. Arizona*, 384 U.S. 436 (1966). At no point was Mr. Maxwell advised of the forthcoming criminal charges against him. Mr. Maxwell was, however, questioned about the facts alleged and he did not validly and expressly waive his right to counsel nor was he informed of his right to remain silent. Mr. Maxwell's statements were the result of coercive law enforcement and/or police conduct, and are therefore tainted. For example, when discussing the length of the investigation, the following interaction occurred:

> Mr. Maxwell: Thought I was out of it, but then I'm right back in it.
>
> Officer Floyd: Yeah.

The Agent used absolute trickery on Mr. Maxwell to imply the investigation would be coming to a close soon, and omitted the fact that the government would be obtaining a warrant for his arrest in the near future. See *Hitselberger,* supra*.* Additionally, Agent Floyd stated the following

throughout the interview:

> Officer Floyd: "Noticed you are beating on the shield"
>
> Officer Floyd: "He gets knocked backwards as you guys are coming through…"
>
> Officer Floyd: "Do you see you kinda' knock into him a little bit, and you hook your arm around his baton?"
>
> Officer Floyd: "Don't be tugging on police batons."

It is clear that the FBI Agents were looking for Mr. Maxwell to provide incriminating information, including but not limited to, identifying himself in the portrayed photographs and videos; placing himself at the scene of the crime; and admitting his reasons for being present on a specific date and time. In actuality, the agents were trying to coerce a confession from Mr. Maxwell. The Government's actions in failing to advise defendant of his *Miranda* rights, then subjecting him to law enforcement interrogation such that questions were reasonably likely to elicit incriminating responses, while in custody, renders defendant's statements tainted and illegally obtained. Therefore, these statements must be suppressed.

**B. All Statements Made by Mr. Maxwell Were Obtained in Violation of Mr. Maxwell's Fifth Amendment Right Against Self-Incrimination and in Violation of Mr. Maxwell's Right to Due Process and Must be Suppressed.**

> **i. Statements Made by Mr. Maxwell Were Obtained in Violation of Mr. Maxwell's Fifth Amendment Right Against Self-Incrimination.**

Even if circumstances do not constitute an arrest under the Fourth Amendment, the circumstances here still demonstrate custody under a Fifth Amendment analysis. "Although an encounter between the police and a suspect may not necessarily be deemed an arrest—requiring probable cause—within the meaning of the Fourth Amendment, the same encounter may nevertheless be custodial and require *Miranda* warnings when assessed against the different goals

of the Fifth Amendment. *In re I.J.*, 906 A.2d 249, 257 (D.C. App. 2006). "To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the *Miranda* Court held, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995); U.S.C.A. Const. Amend. 5.

Further, it is well settled than in individual may waive their "right to counsel and to remain silent, provided that waiver is made voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436 (1966). Here, as discussed above, the questions and assertions put forth by the federal agents were an attempt to extort a confession from Mr. Maxwell and incriminate himself. Additionally, Mr. Maxwell could not have knowingly, intelligently waived such rights because he was never informed of them. Therefore, Mr. Maxwell's statements obtained by the federal agents must be suppressed as a violation of Mr. Maxwell's Fifth Amendment right against self-incrimination.

### ii. Statements Made by Mr. Maxwell Were Obtained in Violation of Mr. Maxwell's Due Process Rights Under the Fifth Amendment.

Statements obtained from an individual that were not a "product of his free and rational choice" must be suppressed. *Mincey v. Arizona*, 437 U.S. 385, 386 (1978). The determination of whether a statement is voluntary "requires careful evaluation of all the circumstances of the interrogation." *Id*. at 401. Coerced statements must nevertheless be suppressed. See *U.S. v. Patane*, 542 U.S. 630, 644 (2004). Coercive police activity is not only taken into consideration when determining if a statement was voluntary, but it is in fact a prerequisite within the meaning of the Due Process Clause of the Fourteenth Amendment. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

The circumstances surrounding the statement of Mr. Maxwell demonstrate that the statement was clearly not voluntary and in fact coerced. The lack of administration of Miranda warnings combined with the Agent's interrogating methods, i.e., putting words into Mr. Maxwell's mouth with leading questions, clearly demonstrated a lack of voluntariness on the part of Mr. Maxwell. Accordingly, Mr. Maxwell's statements to the agents were in violation of the Due Process Clause of the Fifth Amendment, and should be suppressed.

## C. All Statements Made by Mr. Maxwell Were Obtained in Violation of Mr. Maxwell's Sixth Amendment Right To Counsel and Must be Suppressed.

"'Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.'" *Massiah v. U.S.,* 377 U.S. 201, 205 (1964)(internal citations omitted). However, "[t]he Sixth Amendment is [] offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)(internal citations omitted). Here, Nearly one month prior to this interview, a grand jury was empaneled, sworn and returned, recommending charges against Mr. Maxwell. As alluded to above, although Mr. Maxwell was not aware of the empaneling and returning of charges against him, it's very likely Agent Floyd and Agent Urban were aware. Further, Agent Floyd exchanged email correspondence informing an assistant United States attorney that he had uploaded video evidence to an online platform. Accordingly, in the facts of this case, Mr. Maxwell's Sixth Amendment right to counsel attached as soon as the grand jury recommended charges against him, and yet, the FBI contacted him directly and questioned him without counsel present.

## CONCLUSION

**WHEREFORE**, Mr. Maxwell respectfully requests this Honorable Court enter an Order suppressing Defendant's statement made to law enforcement officers on or about December 9, 2021, on the grounds that they were made in response to custodial interrogation without the proper preliminary *Miranda* warnings in violation of Mr. Maxwell's Fourth, Fifth, Sixth and Fourteenth Amendments.

Respectfully submitted,

BY: */s/ Michael T. van der Veen*
Michael T. van der Veen
Attorney for Defendant
Pennsylvania Bar ID #: 75616
1219 Spruce Street,
Philadelphia, PA 19107
Email: mtv@mtvlaw.com
P: (215)-546-1000
F: (215)-546-8529

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Case No. 1:22-CR-00099-RJL |
| **JAKE MAXWELL,** | |
| **Defendant.** | |

**ORDER GRANTING MOTION TO SUPPRESS JAKE MAXWELL'S STATEMENTS**

Upon consideration of Defendant Jake Maxwell's Motion to Suppress, it is HEREBY ORDERED that Defendant's Motion is GRANTED.

IT IS SO ORDERED.

DATED:

_____
The Honorable Richard J. Leon
United States District Judge