UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAKE MAXWELL<br><br>Defendant. | Case No. 22-CR-99 (RJL) |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING SUBMISSION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing supplement pursuant to the Court's April 29, 2024 Order.

**I.     Guidelines Calculation Without Cross-References**

While the government maintains that its guideline calculation presented in its amended sentencing memorandum, ECF No. 88, presents the correct guideline assessment for this case, the Court, during the April 29, 2024 hearing, ruled that the Court would not apply the cross references the government seeks for Counts One, Four, and Five. Without those cross-references, the below guidelines analysis applies. Subsequent sections in this supplement address the applicability of the adjustments raised during the April 29, 2024 hearing.

Count One (18 U.S.C. § 231(a)(3))

| Base Offense Level: | 10 | U.S.S.G. §2A2.4 |
|---|---|---|
| Special Offense Characteristic | +3 | U.S.S.G. § 2A2.4(b)(1)(A) – If the offense involved physical contact, increase by 3 levels. |
| Adjustment | +2 | U.S.S.G. § 3C1.1: Obstructing or Impeding the Administration of Justice |
| Total Offense Level | 15 | |

1

Count Four (18 U.S.C. § 1752(a)(1))

| Base Offense Level: | 4 | U.S.S.G. §2B2.3(a) |
|---|---|---|
| Special offense characteristic | +2 | U.S.S.G. §2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds." |
| Adjustment | +2 | U.S.S.G. § 3C1.1: Obstructing or Impeding the Administration of Justice |
| Total | 8 | |

Count Five (18 U.S.C. § 1752(a)(2))

| Base Offense Level: | 10 | U.S.S.G. §2A2.4(a) |
|---|---|---|
| Specific offense characteristic | +3 | U.S.S.G. § 2A2.4(b)(1)(A) – If the offense involved physical contact, increase by 3 levels. |
| Adjustment | +2 | U.S.S.G. § 3C1.1: Obstructing or Impeding the Administration of Justice |
| Total Offense Level | 15 | |

**Grouping Analysis**

Under U.S.S.G. § 3D1.2, "closely related counts" group.

Group One

Counts Four and Five group under U.S.S.G. §3D1.2(b) because they involve the same victim—Congress—and similar acts "connected by a common criminal objective"—to stop the certification of the Electoral College vote. *See* U.S.S.G. § 3D1.2(a) and (b). The offense level for this group is 15.

Group Two

Count One stands in a separate group under U.S.S.G. §3D1.2(b) because the victim of the offense is the officers—MPD Officer L.H. and the unidentified USCP officer. The offense level for this group is also 15.

One unit is assigned to either Group because they share the highest offense level. U.S.S.G. § 3D1.4(a). One unit is assigned to the other Group since it equally serious. U.S.S.G. § 3D1.4(a).

2

Because two levels are added to the group with the highest offense level, the Combined Offense level is 17. U.S.S.G. § 3D1.4.

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 56. Accordingly, based on the government's calculation of the defendant's total adjusted offense level at 17, Maxwell's Guidelines range is 24–30 months' imprisonment.

## II.   Physical Contact—U.S.S.G. § 2A2.4(b)(1)(A)

As set forth above, the applicable guideline for both Counts One and Five is U.S.S.G. § 2A2.4. *See* PSR ¶ 40; ECF No. 85 at 2; *United States v. Nassif*, 97 F.4th 968, 983 (D.C. Cir. 2024) (holding "that U.S.S.G. § 2A2.4 is the guideline most appropriate to the offense conduct charged in [18 U.S.C. § 1752(a)(2)]"). That guideline provides a specific offense characteristic whereby "[i]f [ ] the offense involved physical contact[,]" a 3-level increase applies. U.S.S.G. § 2A2.4(b)(1)(A). The government maintains, ECF No. 88 at 13–14, 16, that this 3-level increase for physical contact applies to the calculations for Counts One and Five because the offense conduct underlying both convictions *involved* physical contact.

The Court found, beyond a reasonable doubt, that Maxwell's conduct involved physical contact with officers. Indeed, the Court specifically explained that, "Maxwell's contact with the shield of the U.S. Capitol Police officer on the police line on the West Plaza amounted to opposing, impeding, or interfering with that officer, and *involved physical contact*." Tr. at 397 (emphasis added). The Court likewise found that "Maxwell's two contacts with Officer [L.H.]'s baton amounted to opposing, impeding, or interfering with Officer Harvell *and involved physical contact*." *Id.* at 399.

3

This is all U.S.S.G. § 2A2.4(b)(1)(A) requires. *See U.S. v. Beltran-Higuera*, 642 F. App'x 780, 783 (9th Cir. 2016) (holding that the district court did not err in applying a three-level enhancement under U.S.S.G. § 2A2.4(b)(1)(A) for "physical contact" since defendant could reasonably foresee that his actions could bring about physical contact with federal officers). For purposes of this enhancement, whether the defendant "intentionally initiate[d] physical contact with the officers" is irrelevant. *See United States v. Stevenson*, No. 20-3207, 2020 U.S. App. LEXIS 35443, at *3 (6th Cir. Nov. 10, 2020). By "mak[ing] his way to the front of the crowd[, coming] face-to-face within a line of officers, who—as Mr. Maxwell himself acknowledged—'were defending the Capitol[,]'" and "surg[ing] forward into the police line[,]" Tr. at 394–95, Maxwell understood that his actions could involve physical contact with officers, *see Beltran-Higuera*, 642 F. App'x at 783.

Defense counsel's references during the April 29, 2024 hearing to Judge Bates' opinion in *United States v. Yang*, No. 23-100 (JDB), 2024 U.S. Dist. LEXIS 22938, at *1 (D.D.C. Feb. 9, 2024), are particularly ineffectual here, as that opinion did not analyze U.S.S.G. § 2A2.4(b)(1)(A). As explained in Section V of this supplement, that opinion dealt with the application of the § 4C1.1 adjustment for certain zero-point offenders. Indeed, as Judge Bates explained, the defendant in that case "admitted to making physical contact with [ ] officers and agreed that this contact triggered a three-level sentencing enhancement[]" pursuant to § 2A2.4(b)(1)(A). *Yang*, 2024 U.S. Dist. LEXIS 22938, at *4.

### III. Obstructing or Impeding the Administration of Justice—U.S.S.G. § 3C1.1

U.S.S.G. § 3C1.1 provides for a two-level offense level increase where "the defendant willfully obstructed or impeded, or attempted to instruct or impede, the administration of justice

4

with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct relates to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." As the government explained in its amended sentencing memo, ECF No. 88 at 11–12, 15, this two-level increase applies to Maxwell because he provided materially false testimony under oath during trial. § 3C1.1 n.4(B).

Maxwell gave three categories of materially false testimony under oath. First, Maxwell repeatedly claimed, *see, e.g.*, Tr. at 281, 285, 316–317, and continues to claim by implication, *see* ECF No. 85 ¶¶ 15,17, that—while he *now* knows he was not permitted to be at the Capitol on January 6, 2021—he did not know that at the time of the offense. This testimony was false. The Court's verdict, based on the evidence, directly contradicts and does not credit Maxwell's assertion: "the Court [ ] finds, beyond a reasonable doubt, that Mr. Maxwell *knew he was not supposed to be in those places*." Tr. at 402 (emphasis added). This testimony cannot have been the "result of confusion, mistake, or faulty memory[.]" *United States v. Olson*, No. 22-cr-144-GMH, 2023 U.S. Dist. LEXIS 134626, at *26 (D.D.C. Aug. 3, 2023) (quoting § 3C1.1 n.2). The false testimony was clear, deliberate, repeated (in fact, repeated in the defendant's sentencing memo), and tied directly to the elements of the offenses for which Maxwell was convicted.

Second, Maxwell emphatically testified that he "did not join a mob that hurt police." Tr. at 322. This testimony was false. Again, the Court's verdict, based on the evidence, directly discredits this claim, which goes to the essential elements at issue during trial:

> Mr. Maxwell, who deliberately cut a path to the front of the mob and the police line, and who joined in a crowd that he knew included assaultive rioters, did so with the "intended purpose" of obstructing, impeding, or interfering with the police's mandate to protect the Capitol and its inhabitants and to clear the grounds of all demonstrators.

Tr. at 395.

Third, Maxwell testified decisively during cross examination that he did not witness any fighting with police until he made it to the very front of the mob. Tr. at 312–314. This was not true, and Maxwell admitted as much upon being shown video, GEX 502, of himself watching violence against officers prior to reaching the front of the police line. Tr. at 315.

Any one of these categories of materially false testimony independently calls for the two-level obstruction adjustment, let alone all three combined. U.S.S.G. §3C1.1 n.4(B).[1]

## IV. Acceptance of Responsibility—U.S.S.G. § 3E1.1

Maxwell has not—and cannot—demonstrate he is entitled to a two-level reduction in the offense level under U.S.S.G. § 3E1.1. It is the defendant's burden to "clearly demonstrate acceptance of responsibility[.]" § 3E1.1(a).[2] Maxwell's bare representations that he regrets

---

[1] "The plain language of the Application Notes of U.S.S.G. § 3C1.1 makes clear that [the defendant] may be subject to the obstruction of justice enhancement even though he is never separately charged with perjury. See U.S.S.G. § 3C1.1 cmt n.5, 8 (2010) (distinguishing the application of the obstruction of justice enhancement in cases where defendant is separately charged with perjury stemming from the same conduct)." *United States v. Hines*, 71 F. Supp. 3d 104, 108 (D.D.C. 2014).

[2] As the Court explained at the end of trial:

> [T]he burden to convince the Court is on the defense, not on the government. The defense has to demonstrate, from the record and from whatever else it has as its basis, that the defendant in fact does accept responsibility. That's the burden on the defense, not on the government. The government can seek to refute it if it wishes, but that's the defense's burden.

6

entering Capitol grounds and acknowledgement that he *should* have known that he was not permitted on Capitol grounds are insufficient to carry this burden. ECF No. 85 ¶ 14. This rings particularly true where, even now, Maxwell "maintains his innocence for all of the crimes for which he was charged[.]" *Id.* ¶ 17. In any event, "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." § 3E1.1 n.2. Maxwell went to trial and contested factual guilt on all counts for which we was convicted; for example, he contested that he had the intent to impede officers, Tr. at 374, or knowledge of any restrictions at the Capitol, Tr. at 378.

Moreover, as explained in Section III, above, the obstruction of justice enhancement under USSG §3C1.1 properly applies, which militates against awarding acceptance of responsibility.

V.     **Zero-Point Offender Adjustment—U.S.S.G. § 4C1.1**

Maxwell likewise does not qualify for a two-level reduction under U.S.S.G. § 4C1.1. As the government previously explained, ECF No. 88 at 18, § 4C1.1 does not apply in this case because Maxwell used violence in connection with the offense; specifically, when he (1) pushed against the police line as part of the crowd on the West Plaza, (2) pushed against a USCP Officer's riot shield, and (3) struggled with Officer L.H. over a police baton. *See* U.S.S.G. § 4C1.1(a)(3).

In support of their argument for the reduction during the April 29, 2024 hearing, though not raised in their sentencing memo, defense counsel referred to Judge Bates' opinion applying a two-level decrease under 4C1.1 in *United States v. Yang*, No. 23-100 (JDB), 2024 U.S. Dist. LEXIS 22938 (D.D.C. Feb. 9, 2024). But Judge Bates' decision does not support Maxwell's position. For one, Yang did not "deliberately cut a path to the front of the mob and the police line"

---

Tr. at 407–08.

Tr. at 395, on the West Plaza after witnessing other members of the mob assaulting officers away from the police line—as Maxwell did. Instead, Yang remained in the Rotunda as officers attempted to remove members of the crowd, where he "briefly grabbed an officer's wrist [and] released it almost instantly and put his hands back up in the air, shaking them and shaking his head." *Yang*, 2024 U.S. Dist. LEXIS 22938, at *2. Unlike Maxwell, Yang was "overtly nonconfrontational," and he restrained another rioter that was aggressive toward the officers. *Id.*

Unlike Yang, Maxwell intentionally put himself at the forefront of the mob he knew to be violent, which eventually worked together to breach the West Plaza police line and force officers to retreat. *See* Tr. at 395. ("Maxwell surged forward into the police line and, in fact, breached it[.]"). Unlike Yang, Maxwell then stayed with the violent mob pursuing officers up to the inaugural stage and the Tunnel. Maxwell waved other rioters along, encouraging them to continue their attempts to breach the building. And while Yang, like Maxwell, had encounters with officers wielding batons, the two defendants' actions regarding those batons were quite different. Yang "briefly grabbed" a baton being used to push the rioter Yang was restraining. Maxwell, after surging forward to join the mob's front lines, slammed into a U.S. Capitol Police officer's riot shield, wrapped his arm around Officer L.H.'s baton and repeatedly grabbed at the baton.

While the defense relies on *Yang* in urging the court to apply § 4C1.1, the government is aware of several cases in which judges in this District have rejected the application of § 4C1.1 to January 6 defendants who engaged in similar conduct. First, in *United States v. Reyher*, No. 23-cr-138 (RBW), the court did not apply § 4C1.1 where the defendant pled guilty to one count of 18 U.S.C. § 231(a)(3). Like Maxwell, the Rehyers were acting as part of the mob that was attacking police lines and pushing toward the building. Like the Rehyers, Maxwell observed violence all

8

around him on the West Plaza, yet he pushed toward the building and made contact with officers as an active participant of the violent mob that ultimately caused the police line to fail, injuring scores of officers in the process. Maxwell and his companions got to the front of the crowd "like they always do," Tr. at 216, and continued to push forward against the police line. While Officer L.H. had his attention focused on Maxwell—who *chose* to support the front line of a mob he knew to be violent—the police all around were being targeted by repeated attacks, all of which ultimately caused the line to fail. *See United States v. Bauer*, No. 21-cr-386-2 (TNM), ECF No. 195 at 4–5; *United States v. Hernandez*, No. 21-cr-445 (CKK), ECF No. 65 at 5.

Maxwell alternatively does not qualify for a 4C1.1 reduction because he engaged in acts constituting a credible threat of violence. § 4C1.1(c). In *United States v Andrulonis*, No. 23-cr-85 (BAH), Judge Howell explained how a defendant that joined the mob, in the manner Maxwell did, even if that defendant did not personally engage in violence, would not qualify for a § 4C1.1 reduction. In that case, Andrulonis pled guilty to violating 18 U.S.C. § 1752(a)(1). On January 6, around the same time Maxwell was knowingly participating in the breach of the police line on the West Plaza, Andrulonis was in a crowd that eventually breached the Northwest Steps, gaining access to the Upper West Terrace where several rioters used police barriers as ladders to scale the steps, ultimately entering the first floor of the Capitol through a smashed window adjacent to the Senate Wing doors. While inside the building, Andrulonis took photos and witnessed rioters verbally and physically assaulting officers. Like Maxwell, Andrulonis was in Criminal History Category I.

At sentencing, Judge Howell declined to award Andrulonis a 2-level reduction pursuant to

§ 4C1.1. As Judge Howell explained:

> [While] I appreciate that Mr. Andrulonis in this case did not himself personally engage in physical contact that was violent with officers[,] . . . this qualification criteria is broader than just simply not using violence, it also involves . . . whether the offense conduct involved credible threats of violence. In evaluating whether credible threats of violence were posed by the defendant's offense conduct, to my mind, the context matters very critically. In other words, evaluating a defendant's offense conduct requires examination of all the factors of the offense including *what the particular defendant being sentenced did; where he was; what he was seeing; what a person would reasonably understand was the volatility of the situation; the threat that whole situation would pose to others; the foreseeable harm of the situation; and the consequences of the specific defendant's individualized actions*. So the fact that this defendant is not personally charged with assaulting or attacking officers is, therefore, not sufficient to make him eligible for the zero criminal history score offense-level reduction.

Id. at 11–12 (emphasis added). Judge Howell ultimately concluded that, upon considering Andrulonis' observation of the riot's chaos, including the mob overwhelming law enforcement, that Andrulonis was ineligible for a 4C1.1 reduction.[3] Maxwell is similarly ineligible because he chose to join "a situation [ ] that posed clear threats, credible threats of violence against law enforcement and people who were conducting their work inside the Capitol Building." *Id*. at 13.

And even if this Court were to conclude that Maxwell is eligible for a § 4C1.1 reduction, the Court should depart upward to correct for the reduction.[4] For one, the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the

---

[3] Judge Howell also concluded that, even if the two-point reduction applied, it would not change Andrulonis' sentence.

[4] One method by which the Court may depart upward to recognize the unique nature of offenses like Maxwell's would be to utilize U.S.S.G § 5k2.7. As the Commission has noted, "The base offense level [under § 2A2.4] does not assume any significant disruption of governmental functions[, and i]n situations involving such disruption, an upward departure may be warranted. *See* § 5K2.7 (Disruption of Governmental Function)." § 2A2.4 n.3.

10

peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g., United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-

11

seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      UNITED STATES ATTORNEY

BY:   */s/ Elizabeth N. Eriksen*
       ELIZABETH N. ERIKSEN
       Trial Attorney, Detailee
       VA Bar No. 72399
       U.S. Dept. of Justice, Criminal Division
       Detailed to the USAO-DC
       601 D Street NW
       Washington, DC 20530
       elizabeth.eriksen2@usdoj.gov
       (202) 616-4385

       */s/ Nathaniel K. Whitesel*
       NATHANIEL K. WHITESEL
       Assistant United States Attorney
       DC Bar No. 1601102
       601 D Street NW
       Washington, DC 20530
       nathaniel.whitesel@usdoj.gov
       (202) 252-7759

       */s/ Sean J. Brennan*
       SEAN J. BRENNAN
       Assistant United States Attorney
       NY Bar No. 5954128
       601 D Street NW
       Washington, DC 20530
       sean.brennan@usdoj.gov
       (202) 252-7125